OLIVER STANTON et al., Respondents, *v.* GEORGE W. MILLER et al., Appellants.

Mrs. M. entered into a contract with S., by which, in consideration that he would move to R. with his family and take care of and support her during her life, she agreed to assure to him and his family her house and lot after her death, and to secure the title by placing a deed *in escrow* or by will, the title to be given to such members of the family of S. as she might choose. The family of S. consisted of himself, his wife and four daughters. *Held,* that an action for specific performance of the contract could not be maintained, because of the want of certainty in respect to the persons to whom the conveyance or devise was to be made, unless by some act of Mrs. M., irrevocable or unrevoked, during her life, she made the designation.

Whether a court of equity, when called upon to enforce the specific performance of a contract, will, in all cases, regard that as done by the party seeking the relief which he was ready to do, but was prevented from doing by the other, and administer the relief as though there had been actual performance, *quære.*

Mrs. M., at the time of executing the contract, was advised by B., her counsel, who drew it, that she could put an end to it whenever she chose to do so, subject only to a liability for damages, and she relied upon this advice in entering into it. A few days thereafter Mrs. M. executed and delivered to B. a deed of the premises to the four daughters, together with a written declaration to the effect that she had executed the deed pursuant to the contract and delivered it *in escrow* to B. for the use of the grantees at her decease, subject to the performance of his contract by S. The latter was not apprised of the character of the deed and was not a party to this transaction. Subsequently Mrs. M. notified B. that she had changed her mind, and directed him to destroy the deed and the papers, and never to deliver them. B. did not destroy them. In an action by S. and the four daughters, after the death of Mrs. M., against her heir at law and B., to compel the delivery of the deed, *held*, that it was competent for Mrs. M. to reserve dominion of the deed, and the right to withdraw it; that the written declaration did not preclude defendants from showing that the authority conferred was given subject to the right on her part to revoke it at any time, which fact was clearly to be inferred from the evidence; and that the subsequent direction to B. to destroy the deed amounted to a revocation, and such deed from that time became a nullity.

The condition upon which a deed is placed *in escrow* may be expressed in writing, or rest in parol, or be part in writing and part oral.

*Stanton* v. *Miller* (1 N. Y. S. C. [T. & C.], 23) reversed.

(Argued April 24, 1874; decided September 22, 1874.)

APPEAL from order of the General Term of the Supreme Court granting a new trial to plaintiffs upon motion, under section 268 of the Code. (Reported below, 1 N. Y. S. C. [T. & C.], 23.)

This action was brought to compel the delivery by defendant Benedict of a deed of certain premises situate in Rochester, alleged to have been placed in his hands *in escrow*, and to compel defendant Miller to surrender up possession of the premises.

On the 23d of June, 1870, Mrs. Mary Miller, a widow lady residing in the city of Rochester entered into a contract with Oliver Stanton, who resided in Cobourg, Canada, which, after a recital of the moving causes of the contract, proceeds as follows:

" Now, therefore, it is mutually agreed between the parties that said Stanton immediately remove with his family to the home residence of Mrs. Miller on Union street, in the city

of Rochester, and at once assume all the responsibilities of housekeeping, taking possession and control of said house and furniture and paying all expenses of the same; and said Stanton agrees to assume all the care and support of Mrs. Miller, furnishing her attentions, nursing when sick, which she may require, so that she shall at all times be cared for and made as comfortable as possible during her natural life. Mrs. Miller on her part, in consideration of such care, support and attentions, hereby agrees to make sure to said Stanton and his family the house and lot which she now occupies as a home and family residence, the lot being 100 feet front on Union street and 100 feet deep, the title thereto being given to such member or members of said Stanton's family as Mrs. Miller may choose, and to be made in such a way as she may be advised and in such manner as shall make it fully secure, at the same time under such conditions as to stand as ample security for the full and faithful performance of this contract on the part of said Stanton; and in case he fails to keep and perform his contract in its letter and spirit his right to said property shall fail and the same may be disposed of as said Mrs. Miller shall choose; the title to said property to be given by a deed *in escrow* or by a will, as said Mrs. Miller may choose or be advised, after the said Stanton shall have become a resident and they shall have properly declared their intentions to become citizens of the United States of America."

At the time of making this contract the family of Mr. Stanton consisted of himself, his wife and four daughters; the daughters are co-plaintiffs herein.

In pursuance of this agreement Mr. Stanton removed to Rochester with his family, and on the 25th of June, 1870, Mrs. Miller procured a deed to be drawn by defendant Benedict, her counsel, of the premises referred to in the agreement, to the four daughters of Mr. Stanton, conveying the premises to them, "subject to the use of said premises by Oliver Stanton for a home for himself and family during his natural life." This was executed by her and delivered

to the defendant Benedict with a writing signed by her, of which the following is a copy :

" I have this day executed a deed of my house and lot which I now occupy to Miranda P., Mariah H., Harriet M. and Mary Anna Stanton, which is subject to the performance of a contract made by Oliver Stanton, their father, in regard to my support, etc., dated the twenty-third instant. The said deed is delivered to O. M. Benedict, of Rochester, *in escrow*, for the use of the grantees at my decease, and not deliverable to them before that time."

The court found the following facts, among others, in addition to those above stated :

That said Stanton performed said agreement on his part until the 20th July, 1870, when Mrs. Miller directed him to leave her house, and he did so, with his family, under protest. That when she directed said Stanton to leave her house she offered to pay him damages, which he refused, and she directed said Benedict to destroy said deed and not to deliver it, and she executed a will devising said house and lot to her son (defendant Miller) and two of his children. That at the time of making said agreement and the deed and will, in which the Stantons were named, the said Mary Miller was sick and feeble, and it was not supposed by herself or the Stantons that she could recover, or that she could survive many months. She was living with no one but servants in her house and was troubled and anxious on account of her lonely condition, and her mind and memory were slightly impaired, though not to such an extent as to render her incapable of making a valid contract. That the value of the house and lot mentioned in the complaint was $10,000 ; that at the time of making the agreement it was supposed and understood by all parties that the undertaking of said Oliver Stanton was a very inadequate consideration for the said house and lot, and it was so in fact. That at the time of entering into her contract Mrs. Miller was advised by her said counsel who drew the papers that she could put an end to her arrangement provided for by the

contract whenever she chose to do so, but that in such case she would be liable for damages, and she relied on such advice in entering into said contract; but the fact that such advice was given was not known to the Stantons. That Mrs. Miller died on the 28th July, 1870, and after her death the plaintiffs made demand for the deed and for possession of the premises.

The court decided, as matter of law, that the plaintiffs were not equitably entitled to a decree for the special performance of the contract to convey the house and lot, or for the delivery of the deed left with O. M. Benedict, or for a delivery of the/ possession of the house and lot therein described, and the prayer for the same should be denied. But that the plaintiffs, some or one of them, were entitled to receive compensation for their damages in the premises, and to have the amount of such damages ascertained and adjudged in this action; and for that purpose to have liberty to move that the legal representatives of Mrs. Miller be made a party to this action, if they shall be advised the same is necessary, and also to move for a reference or an issue to ascertain the amount of such damages, and, in the mean time, the further hearing of the action should be ordered to stand over till the coming in of the report or verdict; and all further questions, including the question of costs, should be reserved.

*George W. Miller*, appellant, in person. Delivery is essential to the validity and taking effect of a deed. (*Ford* v. *James*, 4 Keyes, 300; *Fisher* v. *Hall*, 41 N. Y., 416; 2 C. & H. Notes [3d ed.], 826, 828.) The deed being *in escrow* could not take effect until the performance of all the conditions upon which its delivery depended. (4 Kent's Com., 454; 2 Wash. on R. P., 586 [2d ed., 44]; 2 C. & H. Notes [3d ed.], 827; 7 Greenl., 181; 6 Wend., 666; *Beekman* v. *Frost*, 18 J. R., 544, 572; 1 J. Ch., 114; *Jackson* v. *Dunlap*, 1 J. Cas., 114; *Russell* v. *Rowland*, 6 Wend., 666; *Clark* v. *Gifford*, 10 id., 311; *Hinman* v. *Booth*, 21 id., 267;

*Gilbert* v. *N. A. Ins. Co.*, 23 id., 43 ; *Green* v. *Putnam*, 1 Barb., 500 ; *Roosevelt* v. *Carow*, 6 id., 190 ; *Jacobs* v. *Alexander*, 19 id., 243 ; *People* v. *Bostwick*, 32 N. Y., 445 ; *Brackett* v. *Barney*, 28 id., 340, 341 ; *Cagger* v. *Lansing*, 43 id., 550 ; *Smith* v. *S. R. Bk.*, 32 Vt., 341, 347.) The intent of the grantor must govern, and this is to be derived from all the facts, circumstances and proofs. (*Goodtitle* v. *Bailey*, 2 Cooper, 600 ; *Com. Bk.* v. *Reckless*, 1 Hals. Ch., 430 ; *Parker* v. *Duston*, 2 Foster, 424 ; *Doe* v. *Knight*, 5 B. & C., 671 ; *Cook* v. *Brown*, 34 N. H., 460.) The deed in suit was testamentary in its character. (*Cook* v. *Brown*, 34 N. H., 460 ; *Baker* v. *Haskell*, 47 id., 479 ; *Turner* v. *Scott*, 51 Penn., 126 ; *Hathaway* v. *Payne*, 34 N. Y., 92.) Courts of equity do not enforce contracts which are not obviously certain as to terms and conditions. (Fry on Spec. Per., §§ 48, 203, 229 ; *Taylor* v. *Partington*, 7 De G., M. & G., 328 ; 2 De G. & J., 572 ; Fonblanque's Eq., bk. 1, chap. 3, § 7, and cases cited in note *z ; Rose* v. *Cunningham*, 11 Ves. Jr., 555, note 2 ; Adams' Eq., 184, note 4 ; Will. Eq. Jur., 267 ; *S. W. R. Co.* v. *Wythes*, 5 De G., M. & G., 880.) Incomplete gifts are never enforced in equity. (*Callaghan* v. *Callaghan*, 8 Cl. & F., 374 ; *Coleman* v. *Sarrel*, 1 Ves. Jr., 56, note 2 ; Fry, § 64 ; 2 Story Eq. Jur., § 793, *a ;* 793, *b ; Acker* v. *Phœnix*, 4 Paige, 308 ; *Minturn* v. *Seymour*, 4 J. Ch., 500 ; *Freeman* v. *Freeman*, 43 N. Y., 34.) Equity only seeks to enforce the actual intent of the parties. (2 Story Eq. Jur., § 770 ; Dart on Vendor and Purchaser [2d. ed.], 485 ; *Malius* v. *Freeman*, 2 Keen, 34 ; *Townsend* v. *Stangroom*, 6 Ves. Jr., 341, note *a ; Mortloch* v. *Buller*, 10 id., 319, 392, note *i ; Lloyd* v. *Bennet*, 8 C. & P., 124 ; *Matthews* v. *Terwilliger*, 3 Barb., 50 ; *Washburn* v. *Merrills*, 1 Day's Cas. in Error, 139 ; *Cuff* v. *Dorland*, 50 Barb., 438.) In cases where the defendant could not enforce specific performance against the plaintiff, the latter has no such remedy against the defendant. (Add. on Con., 182 ; Fry on Spec. Per., §§ 286, 287 ; *Keen* v. *Stukeley*, Gilb. Eq., 155 ; Adams' Eq., 82, 193 ; 2 Story Eq. Jur., § 723 ; Dart on Vendors and Pur-

chasers, 494; Will. Eq., 267; *Ogden* v. *Fossick*, 4 De G., F. & J., 426; *Marble Co.* v. *Ripley*, 10 Wall., 339, 358, 359; *Bronson* v. *Cahill*, 4 McL., 21; *Benedict* v. *Lynch*, 1 J. Ch., 370; *Hamilton* v. *Grant*, 3 Dow P., 33, 42, 46; *Hooper* v. *Brodrick*, 11 Sim. [34 Eng. Ch.], 47; *Kemble* v. *Kean*, 6 id., 333; *Clark* v. *Price*, 2 Wils., 157; *Hamblin* v. *Denneford*, 2 Edw. Ch., 528; *Justice* v. *Lang*, 42 N. Y., 493.) An agreement between two parties for the benefit of a third party cannot be enforced by the third party, a volunteer. (*Colyear* v. *Countess of Mulgrave*, 15 Eng. Ch. [2 Keen], 98, note 2; *Johnson* v. *Hubbell*, 5 L. R., 177, 185.) Where the mutual performance of a contract is rendered impossible and there has been a partial performance, it cannot be specifically enforced. (*Morss* v. *Elmendorf*, 11 Paige, 277; *Wood* v. *Rowe*, 2 Bligh, 595; 2 Story Eq. Jur., §§ 772, 773.) The inadequacy of the consideration was so gross as to warrant the court in refusing aid. (Will. Eq., 266; *Parmelee* v. *Cameron*, 41 N. Y., 392; *Dunn* v. *Chambers*, 4 Barb., 376; *Harding* v. *Handy*, 11 Wheat., 103.) The contract cannot be enforced as an agreement to devise. (*Loftus* v. *Maw*, 8 Jur. [N. S.], 607; *Johnson* v. *Hubbell*, 5 L. R., 177; *Parsell* v. *Stryker*, 41 N. J., 185; *Haguenin* v. *Basely*, 14 Ves., 273; 2 W. & T. L. Cas. in Eq., pt. 2 [37 L. Lib.], 71; 2 Dev. & Bat. Eq., 241.)

*Geo. F. Danforth* for the respondents. Plaintiffs are entitled to a delivery of the deed to the grantees named therein. (2 Story Eq. Jur., p. 16, § 703; 3 Wash. on R. P., 192; Co. Litt., 36 a 3; *Belden* v. *Carter*, 4 Day, 66; *Beekman* v. *Frost*, 18 J. R., 544; Shepard's Touch., 56, 57; *Jackson* v. *Catlin*, 2 J. R., 258; *Hatch* v. *Hatch*, 9 Mass., 309.) Plaintiffs are entitled to a decree for the specific performance of the contract. (*Parsell* v. *Stryker*, 41 N. Y., 480; *Seymour* v. *Delancy*, 3 Cow., 445; *Parmalee* v. *Cameron*, 41 N. Y., 392–396; *Lobdell* v. *Lobdell*, 36 id., 327; *Barnes* v. *Barnes*, 65 N. C., 261.) Plaintiffs cannot have adequate relief at law. (2 Story Eq. Jur., §§ 224, 718; 3 Pars. on Con., 350, 364–373; *March*

v. *Blackman*, 50 Barb., 329; *Rhodes* v. *Rhodes*, 3 Sandf. Ch., 279; *Parsell* v. *Stryker*, 41 N. Y., 480; *Stephens* v. *Reynolds*, 6 id., 458.) If the contract was not mutual that would not constitute a defence to this action. (*In re Jane Hunter*, 1 Edw. Ch., 1; *White* v. *Schuyler*, 1 Abb. [N. S.], 300; *Woodward* v. *Harris*, 3 Sandf., 272; *Grant* v. *Johnson*, 5 N. Y., 247; *Justice* v. *Lang*, 42 id., 493, 524; *Sherley* v. *Ayres*, 14 Ohio, 308; 3 Wash. on R. P., 272; *Millership* v. *Brooks*, 5 H. & N., 796.)

ANDREWS, J. There is an insuperable difficulty in the way of maintaining this action, regarding it as an action for the specific performance of Mrs. Miller's agreement of June 25, 1870, to convey or devise the house and lot in question, growing out of the want of certainty in respect to the persons to whom the conveyance or devise was to be made.

In consideration that Mr. Stanton would remove with his family to Rochester, and take care of and support Mrs. Miller during her life, she promised to assure to him and his family the house and lot (after her death), and to secure the title by placing a deed *in escrow*, or by will. If there was no specific provision in the contract on the subject, it would be inferred, I think, that the title to the house and lot was ultimately, to be vested in Mr. Stanton, the other party to the agreement. In a general sense such a disposition of the property would be for the benefit of the grantee or devisee and his family. But that this was not the intention of the parties is conclusively established by a clause in the contract which declares that the title shall be given to such "member or members of said Stanton's family as Mrs. Miller may choose." Construing this clause in connection with the other provisions of the contract, the agreement of Mrs. Miller was this: to give the house and lot by will, or by deed to take effect after her death, to such person or persons, members of the family of Mr. Stanton, as she should thereafter select and determine, upon condition, however, that Mr. Stanton should have fully performed the contract on his part. The clause

referred to was not a reservation by Mrs. Miller of a power to change the appointment of the title from the course defined in the contract, but was intended to provide for a designation at a future time of the appointees, who by the contract were left wholly uncertain, except that it defined the class of persons from which they should be selected. Unless Mrs. Miller, prior to her death, by some irrevocable act, or by some act which if not irrevocable during her life was not in fact revoked by her, designated the particular members of the family of Mr. Stanton who should take the land under the contract, the court cannot enforce its specific performance. It is an elementary principle governing courts of equity in the exercise of this jurisdiction, that a contract will not be specifically enforced unless it is certain in its terms, or can be made certain by reference to such extrinsic facts as may, within the rules of law, be referred to, to ascertain its meaning. (Fonblanque's Eq., bk. 1, chap. 3, § 7; Adams' Eq., 184; *Buxton* v. *Lister*, 3 Atk., 386; *Lord Walpole* v. *Lord Oxford*, 3 Ves., 420; *Rose* v. *Cunynghame*, 11 id., 555, note.) "Nothing" (said Lord HARDWICKE in *Buxton* v. *Lister*) "is more established in this court, than that any agreement of this kind, ought to be certain, fair and just in all its parts." And Lord ROSSLYN, in *Lord Walpole* v. *Lord Oxford*, said: "I lay it down as a general proposition, to which I know no limitation, that all agreements, in order to be executed by this court, must be certain and defined;" and although the uncertainty may be caused by an obstacle interposed by the defendant or by his default, the rule is not changed if the court, in order to enforce the contract, will be required to supply a new term to the agreement. (*Wilkes* v. *Davis*, 3 Mer., 507; *Dailey* v. *Whitaker*, 4 Drew, 134; *Blundell* v. *Brettargh*, 17 Ves., 232; *Morgan* v. *Milman*, 3 De G., M. & G., 24.) The plaintiff in such a case will be left to his remedy in an action for damages.

The plaintiffs are Mr. Stanton and his four daughters, and they, together with Mrs. Stanton, the wife of Mr. Stanton, comprised his family when the contract was made. The con-

tract of Mrs. Miller would have been performed if she had conveyed or devised the land to Mrs. Stanton, who is not a party to the action, or to any one or more of the plaintiffs. The plaintiffs cannot say that Mrs. Miller intended that they or any two of them should have the land, looking to the contract only; and if the court, in the absence of proof of a valid designation by Mrs. Miller of the persons who should take the title, shall decree it to them, it will be making a contract between the parties, and not executing one. That no irrevocable or valid appointment of the title was made by Mrs. Miller will be shown hereafter; and without considering the other objections in the way of decreeing a specific performance, urged by the counsel for the defendants, I am of opinion, for the reasons stated, that the contract of June 23, 1870, cannot be specifically enforced.

The specific relief demanded in the complaint is two-fold: *first*, that the defendant Benedict, the depositary of the deed of June 29, 1870, be compelled to deliver it to the plaintiffs; and, *second*, that the defendant Miller, the son and sole heir at law of Mrs. Miller, who is in possession of the house and lot, deliver the possession to them. The right to the delivery of the deed is claimed, on the ground that it was deposited by Mrs. Miller in the hands of Benedict, *in escrow*, pursuant to the contract of June 23, 1870, to await the performance of the contract on the part of Mr. Stanton, and in case of performance to be delivered to him at the death of Mrs. Miller, and that Mr. Stanton performed his contract, or what is claimed to be equivalent thereto, tendered performance, and held himself in readiness to perform, at all times during Mrs. Miller's life.

A deed delivered to a third person to be held until the performance of some condition, is a delivery *in escrow*. (2 Bl., 307.) Unlike the case of a delivery to the grantee, or his agent, no title passes until the condition is performed, nor, generally, until an actual delivery of the deed to the grantee after the happening of the event upon which the title is suspended. This is subject to exceptions, one of which is, that in case of the death of the grantor before condition per-

formed, and it is afterward performed, the law from necessity will give effect to the first delivery, and make it the deed of the grantor from that time. (*Perryman's Case*, 3 Coke, 84.) This fiction is indulged to satisfy the law, which requires that a delivery, to make a deed effectual, must be the act of the grantor; and as his death would operate as a revocation of the authority of the depositary, the intention of the parties would be defeated if a second delivery was required to vest the title. (*Jackson* v. *Rowland*, 6 Wend., 666; *Wheelwright* v. *Wheelwright*, 2 Mass., 447.)

The making of a deed *in escrow*, presupposes a contract, pursuant to which the deposit is made; it implies an arrangement between the grantor and the party who is to perform the condition; and when the one has agreed to convey when the condition is performed, and the other to perform the condition, and the deed has been placed *in escrow*, to carry out the purpose as defined in the contract or arrangement between the parties, without any reservation, express or implied, on the part of the grantor, when the deposit is made, of a right to recall the deed, then the authorities are that the delivery cannot be revoked by the party making it, so long as there is no breach by the other of the condition upon which it was made. (Perkins, § 141; *Graham* v. *Graham*, 1 Ves. Jr., 272; *Miller* v. *Parker*, 2 Metc. [Ky.], 616; *Cook* v. *Brown*, 34 N. H., 476; *Shirley* v. *Ayres*, 14 Ohio, 308; Washburn on Real Prop., 268.)

If the deed of June 29, 1870, was deposited *in escrow* strictly according to the terms of the contract of June 23, 1870, Mrs. Miller could not afterward recall it; and the grantees, on showing that Mr. Stanton had performed his contract, would be entitled to its possession as a muniment and evidence of their title; and the court, in the exercise of its equitable jurisdiction would compel its delivery. (Story Eq. Jur., § 703.) But it was competent for Mrs. Miller, when she deposited the deed with Mr. Benedict, to annex any condition to its delivery to the grantees which she saw fit to do, and to reserve the dominion over it, or the right to with-

draw it at any time from the possession of the depositary. She may have violated the spirit and perhaps the letter of her contract if she in any way qualified the delivery or annexed any condition other than that contemplated by the contract. But the court can only give effect to the transaction as it actually was, and although it is admitted that Mrs. Miller ought not to have retained the power to recall the deed, if in fact she did so, and exercised it, the plaintiffs are put to some other remedy ; they cannot take title by a deed which the grantor neither delivered herself nor put in the power of any other person to deliver for her.

The learned judge at Special Term found, upon evidence which authorized the finding, that when Mrs. Miller entered into the contract she was advised by her counsel, who drew the papers, that she could at any time, at her election, put an end to the arrangement therein provided, subject only to a liability for damages, and that she relied upon this advice in making the contract. The deed, made a few days after the contract, was deposited by Mrs. Miller with her counsel, Mr. Benedict, together with a written declaration of Mrs. Miller to the effect that she had executed the deed pursuant to the contract and delivered it *in escrow* to Mr. Benedict, for the use of the grantees at her decease, subject to the performance by Mr. Stanton of his contract. This declaration is to be considered in connection with the fact, clearly to be inferred from the evidence, that the deed was delivered upon the parol understanding between Mrs. Miller and Mr. Benedict, that she might at any time recall it, and put an end to the bailment. The condition upon which a deed is delivered *in escrow* may be expressed in writing or rest in parol, or be partly in writing and in part oral. The rule that an instrument or contract made in writing *inter partes*, must be deemed to contain the entire agreement or understanding, has no application. The direction to Mrs. Miller's agent was not a contract, and the written authority given by her did not preclude the defendants from showing by proof *aliunde* that it was to be exercised subject to her

right at any time to terminate the agency.   There was no estoppel created, as the evidence shows that Mr. Stanton was not apprised of the character of the deed and was not a party to the . transaction between Mrs. Miller and Mr. Benedict. The subsequent direction of Mrs. Miller to the depositary, to destroy the deed, amounted to a revocation, ·and the deed became from that time a nullity.

I have assumed, throughout this opinion, that Mr. Stanton fully performed his contract.   This assumption is based upon another, viz., that the general rule applies, that when performance of a condition precedent in a contract is prevented by the party to whom performance is due, the latter cannot allege non-performance by the other party as a defence.   Whether a court of equity, when called upon to enforce the specific performance of a contract, will, in all cases, regard that as done by one party which he was ready to do, but which he has been prevented from doing by the other, and administer the special relief demanded as though there had been actual performance by the party demanding it, has not been considered, and is not intended to be decided.

This opinion leads to a reversal of the order of the General Term and the denial of the motion for a new trial.

All concur.

Ordered accordingly.