577 P.2d 1162

William F. BREWER and Helen G. Brewer, husband and wife, Plaintiffs-Respondents,

v.

Donald E. PITKIN and Martha M. Pitkin, husband and wife, Defendants-Appellants.

No. 12369.

Supreme Court of Idaho.

April 26, 1978.

Jerry W. Korn, Dwight F. Bickel, of Bickel, Suiter & Anderson, Boise, for defendants and appellants.

Richard L. Harris, Caldwell, for plaintiffs and respondents.

BISTLINE, Justice.

This case involves a dispute over the amount of certain commissions charged by defendants-appellants Pitkins on lumber supplied to plaintiffs-respondents Brewers from February, 1972, until May, 1973. The lumber was supplied for use in the building of onion crates.

Prior to 1972, Pitkin had owned and operated a crate manufacturing business in Nampa. On February 23, 1972, Brewer purchased the business and at the same time entered into a lease of Pitkin's real estate where the business was located. The controversy centers about the following clause in the lease:

It is understood and agreed that the Lessees [Brewers] are to use the aforede-scribed premises in their business of manufacture and sale of fruit and vegetable crates and pallets, and other miscellaneous work fabrications. In this regard, the Lessors [Pitkins] do hereby agree to supply to Lessees, at their option, all lumber that the Lessors received from their source of 4 × 4 fir and pine and diminal lumber at Lessors' cost, plus $7.00 per 1,000 commission to the Lessors.

Shortly after Brewer took over the business, Pitkin began billing him $16.00 per 1,000 board feet commission on some but not all of the invoices. Brewer paid the bills during the ensuing year until May, 1973. Thereafter Brewer sold the business and brought suit in district court for recovery of all amounts paid over $7.00 per 1,000 board feet commission, alleging that the billings for a $16.00 commission were overcharges in breach of the contractual agreement contained in the lease. The case was tried to a jury which found that under the circumstances, Brewer felt coerced to pay the $16.00 rate.[1] The trial court entered judgment for Brewer in the sum of $9,512.52, plus 6% interest dating from May 2, 1973, plus costs. Pitkins appeal.

Appellants' sole assignment of error relates to evidence held inadmissible by the trial court. The evidence went to Pitkins' theory of the case, namely, that the discrepancy between the commission agreed to in the lease and that charged on the invoices was due to a subsequent oral modification of the terms of the lease. The trial court held that the admission of such evidence would violate the parol evidence rule.[2]

---

1. The jury was not given any general forms of verdict. The only interrogatory question addressed to the jury read: "Was the plaintiff [Brewer] under pressure under the circumstances as shown by the evidence as to make it, in his mind, mandatory that he pay the $16 charges?" When the jury answered, "Yes," judgment was automatically entered in favor of Brewer awarding him the prayed for damages. Neither side seems to have questioned the assumption that a jury finding of Brewer's subjective feeling of coercion at the outset would justify an award of damages for thirteen subsequent months of unprotested payments during the course of dealings of these parties. We expressly decline to rule upon the theory relied upon below. It apparently was satisfactory to the parties.

2. The actual theory relied upon by the trial court was not entirely clear. In at least one bench remark, Judge Norris seems to have based his ruling upon a theory that Pitkin's testimony was inadmissible because it would have contradicted his response to a written interrogatory. During pretrial discovery, Pitkin had answered that the oral negotiations

Pitkin made an offer of proof, which may be summarized as follows: Brewer's lumber requirements increased dramatically soon after he took over the business. His contract commitments were such that he required more lumber, of different quality and different dimensions from that originally contemplated in the terms of the lease. As a result, Pitkin had to line up other suppliers. The result was much more work on the part of Pitkin, especially in the tight lumber market of 1972–73. Consequently, Pitkin informed Brewer that he would have to charge him $16.00 commission for the excess lumber. Starting in mid-April, 1972, the invoices reflect this billing procedure, with about ⅓ of the supply billed at the $7.00 commission rate and ⅔ at $16.00. Brewer paid them all without protest and made no complaint until filing this action after his business had failed.[3]

Pitkin argues that, under the circumstances of this case, such testimony was admissible as evidencing either (a) *an oral modification* of the written agreement; or (b) *a new oral contract* relating to different subject matter, supported by new consideration; or (c) *an offer* by Pitkin to provide additional services for additional compensation, which offer was accepted by Brewer, as evidence by the later course of dealing

took place *before* the lease was executed, a response which, on its face, would have been contrary to his proposed trial testimony that the negotiations took place *after* the signing of the lease. We do not address this issue since, at oral argument, counsel for Brewers stated that this alternative theory was not the point of his objection or of the trial court's ruling. For a thorough discussion of the procedure to be followed "when there is a conflict between answers supplied in response to interrogatories and answers obtained through other questioning, either in deposition or trial," *see Freed v. Erie Lackawanna Railway Co.*, 445 F.2d 619 (6th Cir. 1971), *cert. denied*, 404 U.S. 1017, 92 S.Ct. 678, 30 L.Ed.2d 665 (1972).

**3.** According to Brewer, the reason for the increased commission was that one of Pitkin's former employees, Andrew Murphy, formed a crate-making company at the same time as the sale to Brewer. Murphy was supplied lumber by Pitkin but the crates produced did not measure up to contract specifications and Murphy

between the parties. We agree. The evidence contained in Pitkin's offer of proof was admissible under any of the above theories of the case.

The parol evidence rule has been stated most recently by this Court in the following terms:

Where an agreement is reduced to writing in such terms as to express a complete, integrated contract, evidence of a prior or contemporaneous oral agreement relating to the same subject matter is inadmissible to vary, contradict, or enlarge the terms of the written contract.

*Tapper Chevrolet Co. v. Hansen*, 95 Idaho 436, 439, 510 P.2d 1091, 1094 (1973).[4] The rule operates to bar only "a *prior* or *contemporaneous* oral agreement relating to the *same subject matter*." The converse, therefore, is clear:

It is well known, of course, that the parol evidence rule does not apply so as to prohibit the establishment by parol of an agreement between the parties to a writing, entered into subsequent to the time when the written instrument was executed, notwithstanding such agreement may have the effect of adding to, changing, modifying, or even altogether abrogating the contract of the parties as evidenced by the writing.

was not paid. Consequently, Pitkin was not paid and his overcharges to Brewer were an attempt to make up the slack. Brewer says he paid the $16.00 fee because he "had no choice." He had commitments to manufacture the crates and had no other steady supplier. He himself attempted to purchase lumber in June of 1972, but none of the mills contacted was willing to meet his requirements on a steady basis. Needless to say, in resolving the question of law presented on appeal, we make no holding as to which of the conflicting accounts of these transactions is the more accurate. Such a decision, to the extent necessary, rests with the trier of facts on remand.

**4.** A parallel statement of the rule as framed by the drafters of the U.C.C. is to be found in I.C. § 28–2–202. For the interpretation and applicability of this provision of the U.C.C. to sale contracts in leases, *see Glenn Dick Equip. Co. v. Galey Constr., Inc.*, 97 Idaho 216, 541 P.2d 1184 (1975).

*Brooks v. Beach*, 50 Idaho 185, 189, 294 P. 505, 506 (1930). Here Pitkin had the right to present his version of the case and to explain any apparent inconsistencies in his testimony subject to Brewer's right to impeach him by way of cross-examination. Because of the trial court's erroneous ruling on the admissibility of Pitkin's evidence, we reverse and remand for a new trial. Costs to appellant.

SHEPARD, C. J., McFADDEN and DONALDSON, JJ., and SCOGGIN, District Judge (ret.), concur.